IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BORIS YATSENKO, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 02-CV-05310-SD |
| | : | |
| HONORABLE JOHN ASHCROFT, | : | |
| UNITED STATES ATTORNEY | : | |
| GENERAL, *et al.* | : | |
| Respondents | : | |
| | : | |

GOVERNMENT'S RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

This is an alien habeas corpus case. The petitioner, Boris Yatsenko ("Yatsenko") is a native of Russia and a citizen of Kazakhstan. Yatsenko is presently held by the Immigration & Naturalization Service ("INS") at its contract jail in York, Pennsylvania. The petition challenges Yatsenko's physical detention, and further urges the Court to vacate the order of removal and remand to the Immigration Judge (IJ) for further hearings on various forms of relief.

Yatsenko entered the United States surreptitiously across the Mexican frontier near Nogales, Arizona, on

-1-

February 3, 1998. In September 1999 the INS district director at Buffalo, New York issued a "Notice To Appear" or NTA, which is the charging document in removal proceedings.[1] The NTA alleged that Yatsenko had not been inspected as an alien nor admitted into the United States, and thus was subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an "inadmissible" alien. Yatsenko was directed to appear for a removal hearing on February 23, 2000 in Buffalo. He was not detained. The NTA is attached as Exhibit 1.

Yatsenko was accorded a removal hearing before Immigration Judge Craig DiBernardis in Philadelphia on July 18, 2000. Judge DiBernardis found Yatsenko inadmissible as charged, and ordered him removed. However, the IJ granted Yatsenko the privilege of "voluntary departure" pursuant to 8 U.S.C. § 1229c. Yatsenko had until October 18, 2000 to depart voluntarily; when he did not depart, the alternate order converted to an order of removal as of October 19, 2000. Yatsenko was not, however, detained at that time.

---

[1]    Yatsenko apparently traveled from the Mexican frontier to Canada, where he applied for refugee status. Refugee status was denied, and he was deported from Canada to Champlain, New York on September 22, 1999.

Yatsenko's present counsel subsequently filed a "motion to reopen" the removal proceeding with Judge DiBernardis, although it is not clear when. Judge DiBernardis denied the motion as a matter of discretion on September 19, 2001. According to the petition, Yatsenko through his present counsel then "withdrew" his denied motion to reopen on September 27, 2001, evidently in an attempt to evade the quantitative restrictions on post-order "motions." See 8 U.S.C. § 1229a(c)(6)(allowing one motion to reopen). At some later date, Yatsenko's present lawyer appears to have filed an out-of-time appeal with the Board of Immigration Appeals (BIA), but in light of the fact that she withdrew the motion to reopen, it is not clear what the subject of the appeal was.[2] See "Motion For Hearing," page 2, § II, first para (noting that motion to reopen was withdrawn on September 27, 2001) and IJ's order denying motion reopen on September 19, 2001 (attached as Exhibit 2).

During this maneuvering, Yatsenko did not depart

---

[2]    Yatsenko and his counsel are aware, of course, of the procedural history of the case. Presumably many of the pertinent facts are not asserted in Yatsenko's petition for tactical reasons.

the United States. The case was referred to the INS
Investigations Branch to locate and apprehend the
petitioner.[3]

On May 30, 2002 INS agents found Yatsenko in an
apartment in Northeast Philadelphia and arrested him. As a
matter of discretion, the agents did not apprehend other
members of Yatsenko's family, all of whom are unlawfully
present in the United States.

On June 12, 2002 the INS applied to the consul-
general of Kazakhstan for a travel document, to permit
petitioner to be removed to that country.[4]

On July 24, 2002 Yatsenko filed the instant
petition. Because the petition establishes no illegality in
the proceeding, it must be dismissed.

---

[3]    Referred to in INS argot as a "bag & baggage"
       or "b&b" case.

[4]    Yatsenko's petition adverts to the fact that
       Yatsenko and his family are awaiting
       permission to immigrate to Canada. With
       exceptions, an alien under a final order of
       removal generally may depart to any country
       that will accept him. However, the
       availability *vel non* of immigrant visas in
       Canada is not otherwise relevant to this
       petition, which is limited to testing the
       legality of Yatsenko's present custody and
       detention.

II. <u>ARGUMENT</u>

           A.   Yatsenko Is Within The Removal
                  Period And His Detention Is
                  <u>Lawful</u>

Under the Immigration & Nationality Act (INA),
once Yatsenko's removal order became final, the Attorney
General had a period of 90 days to remove him; <u>see</u> 8 U.S.C.
§ 1231(a). The 90-day term is referred to as the "removal
period." Normally, the removal period starts at the latest
of three points: the date the order becomes administratively
final; the date of any reviewing court's final order; or the
date the alien is released to INS from criminal confinement.
<u>See</u> 8 U.S.C. § 1231(a)(1)(B)(i)-(iii).

During the removal period, detention is
mandatory. 8 U.S.C. § 1231(a)(2). If the INS cannot expel
the alien in the 90 day "removal period," the Attorney
General is obliged to either release the alien, or detain
him subject to conditions under 8 U.S.C. § 1231(a)(6); <u>Ho v.
Greene</u>, 204 F.3d 1045, 1059-60 (10th Cir. 2000).

In this case, Yatsenko's removal order became
final when he failed to depart the United States prior to

the expiration of his voluntary departure period.[5] But he was not in custody then. As a result, agents were assigned to either confirm his departure or locate and bring him in. The government represents that, in this case, Yatsenko's removal period started when INS had a clear opportunity to remove him, *i.e.* May 30, 2002.

As noted in the margin, Section 1231(a)(1) contains a proviso to toll or suspend the removal period when the alien fails to cooperate, or acts to frustrate his

---

[5]     Section 1231(a) provides:
(1) Removal period. (A) In general. Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
....
(C) Suspension of period. The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application **in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal** subject to an order of removal.
8 U.S.C. § 1231(a)(1) (West 2000)(emphasis added).

departure. 8 U.S.C. § 1231(a)(1)(C).[6] In this case, Yatsenko represented to the Immigration Judge that he was willing and able to depart on his own (a statutory prerequisite for voluntary departure; see 8 U.S.C. § 1229c(b)(1)(D)). The IJ did not require Yatsenko to post a departure bond, and Yatsenko was not detained. Thereafter Yatsenko did not apply for a travel document nor take any steps to effect his removal. More than nineteen months after he was entrusted to leave of his own accord, INS found him still in the United

---

[6]    District courts routinely apply the "tolling" provision of § 1231(a)(1)(C) where the alien refuses to cooperate or affirmatively hinders the removal process. There is no logical reason why "tolling" should not be applied to an absconder like Yatsenko. See e.g. Ncube v. INS Dist. Directors and Agents, 98 Civ. 0282, 1998 WL 842349, at *16 (S.D.N.Y. Dec. 2, 1998) (holding alien past removal period not unconstitutional where alien was solely responsible for delay in executing removal order); Sango-Dema v. District Director, 122 F.Supp.2d 213, 221 (D.Mass. 2000)(alien cannot trigger right to freedom from indefinite detention "with his outright refusal to cooperate with INS officials"); Guner v. Reno, 00 Civ. 8802, 2001 WL 940576, at *2 (S.D.N.Y. Aug.20, 2001) (rejecting petitioner's reliance on Zadvydas in challenging detention beyond 90-day removal period where it was petitioner's "[own] efforts [to challenge the denial of discretionary relief from deportation] that have prevented INS from deporting him").

States, with not the slightest intention to depart. The petitioner cannot be heard to complain now that his "removal period" has since expired, or that his detention is somehow unreasonable; Yatsenko has demonstrated that if released from custody, he will not comply with the orders of the Attorney General nor cooperate in the departure process.

Had Yatsenko been admitted to the United States, he would be within the six months' presumptive detention period outlined by the Supreme Court last Summer in <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed. 2d 653 (2001). This means that the INS is entitled to six months to deport the alien, unhampered by judicial stays or the alien's non-cooperation. <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002). To warrant release from detention after six months, the alien must demonstrate that his expulsion cannot be effected in the foreseeable future; <u>Zadvydas</u>, 533 U.S. at 701.

But <u>Zadvydas</u> in terms applies only to the alien who has been "admitted" to the United States. Yatsenko has never been admitted. He entered the United States without inspection across the southern border in 1998, and then was

-8-

paroled into the country when Canada deported him here in 1999. The Zadvydas Court was careful to draw a clear distinction between the Constitutional rights of aliens and those who have not been admitted, like Yatsenko, whether they have acquired physical entry or not. See id., 533 U.S. at 690 ("[a] statute permitting indefinite detention of an [already admitted] alien would raise a serious constitutional problem" under the Fifth Amendment due process clause, but noting that aliens "who have not yet gained initial admission to this country would present a very different question;" id. at 682). The Court also stated that the "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and that "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." Id. at 693.

        Yatsenko's petition, although replete with irrelevant cases decided two decades ago, mentions neither the Court's holding in Zadvydas nor concedes the ineluctable

fact that Yatsenko, an inadmissible alien, is entitled to virtually none of the Constitutional protections at issue in that case. (Indeed, despite the finding of the IJ, Yatsenko now asserts that he is <u>not</u> an inadmissible alien; Motion, page 4, last para. Characteristically, Yatsenko offers no support for this assertion, nor any proof that he was ever admitted.) <u>See</u> <u>Sierra v. INS</u>, 258 F.3d 1213, 1218 (10th Cir. 2001) (Mariel Cuban who had been physically present in the United States for more than twenty years was considered legally detained at the boarder). The key distinction between deportable aliens, on the one hand, and excludable or inadmissable aliens on the other is that "[d]eportable aliens [have been] successful in gaining entry to the United States, legally or illegally; while an inadmissable alien seeks admission into the United States and even if physically present is considered detained at the border." <u>Cabellero v. United States</u>, 145 F.Supp.2d 550, 554 (D.N.J. 2001). The <u>Zadvydas</u> Court reaffirmed the holding in <u>Shaughnessy v. Unites States ex rel. Mezei</u>, 345 U.S. 206 (1953), to the effect that excludable aliens do not have constitutional protection from indefinite detention, and

"whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned;" 345 U.S. at 212.[7] Yatsenko is clearly inadmissible, and the rote citations to his constitutional rights to be at large in the United States disregard the Supreme Court's holding to the contrary.

Thus Yatsenko's detention is violative of neither the Constitution nor the INA. As to Yatsenko's *pro forma* arguments that he is not a risk of flight, and that his detention constitutes an abuse of discretion, the discretionary decisions of the Attorney General are not reviewable on a petition for habeas corpus.

B.    The Attorney General's Decision
      Not To Reopen Yatsenko's Removal
      Cases Was Not Unlawful

Yatsenko's other argument, or set of arguments, is that somehow the Immigration Judge erred in declining to

---

[7]    A decision by a panel of the Ninth Circuit stands virtually alone in concluding that Justice Breyer's distinction between "excludable/inadmissible" and "removable" aliens was a purely anecdotal observation which has no relevance after the 1996 amendments to the INA; Xi v. INS, 298 F.3d 832 (9th Cir. 2002).

reopen Yatsenko's removal case more than a year after it was closed.  Evidently the contention is that, after agreeing to depart in July 2000, Yatsenko met his current counsel, and after consultation with her decided to conjure up an asylum claim, a withholding claim, a claim under the Convention Against Torture, and an ineffective representation claim, with a view to delaying his departure from the United States.[8]

Yatsenko's petition does not vouchsafe to the Court nor to the government precisely what his "well-founded fear of persecution" is if returned to Kazakhstan; see 8 U.S.C. § 1101(a)(42)(for definitions of "refugee" and "well-founded fear"). It is possible that the petitioner did not apprize the Immigration Judge of the basis of his fear either. In any event, a motion to reopen a removal proceeding is to be filed within 90 days of the removal order; 8 U.S.C. § 1229a(c)(6). A motion to reopen to apply

---

[8]    A comprehensive explanation of asylum is in Gao v. Ashcroft, No. 01-3472, - F.3d -, 2002 WL 1805566, *1 (3d Cir. Aug. 7, 2002).  An extended *discursus* on these forms of relief from removal is not critical to the determination that Yatsenko's petition fails to establish a claim of illegality.

for asylum may be filed at any time, but only if there are

"changed country conditions." <u>Id.</u>[9]

Judge DiBernardis' decision not to reopen is

committed to his discretion. Motions to reopen immigration

proceedings are traditionally disfavored for the same reason

the courts disfavor petitions for rehearing and motions for

a new trial, namely, the need for finality in litigation. <u>Xu</u>

<u>Yong Lu v. Ashcroft</u>, 259 F.3d 127, 131 (3d Cir. 2001). There

is a "strong public interest in bringing litigation to a

close as promptly as is consistent with" a fair opportunity

to present claims. <u>INS v. Abudu</u>, 485 U.S. 94, 107, 108 S.Ct.

904, 99 L.Ed.2d 90 (1988). This is particularly true when

dealing with motions to reopen removal proceedings, since

"as a general matter, every delay works to the advantage of

the deportable alien who wishes merely to remain in the

---

[9]    Motions to reopen for asylum or to withhold
       deportation are not subject to the 90-day
       time restriction if based on "changed
       circumstances arising in the country of
       nationality ..., if such evidence is material
       and **was not available and could not have been
       discovered or presented at the previous
       hearing.**"
       8 C.F.R. § 3.2(c)(3)(ii) (West 2000)(emphasis
       added).

-13-

United States." <u>Xu</u>, 259 F.3d at 131.

     Here, after proceeding through a removal case without mentioning asylum or any fear of returning home, Yatsenko suddenly discovers a fear of persecution at the same time he finds a new attorney, and only after his removal order is final. Immigration Judge DiBernardis evidently reacted to this transparent invention with some asperity, "shouting at [petitioner and counsel] and being unjustifiably rude,..." Petition, page 2, § 6. Presumably the judge found the assertion frivolous and a waste of scarce immigration court resources. Three weeks ago, the Third Circuit rejected a claim on all fours with Yatsenko's case in <u>Emruloski v. Ashcroft</u>, No. 01-4083, 2002 WL 1768996, *1 (3d Cir. Aug 1, 2002)(unpublished). Emruloski was a Russian who received a grant of voluntary departure in lieu of a deportation order, then failed to depart. When the INS caught up with him, he filed a motion to reopen out-of-time, to apply for asylum. The panel sustained the BIA's denial of the motion to reopen; Judge Nygaard observed that "[a]dditionally important is the Immigration Judge's determination that the motion to reopen proceedings was a

-14-

dilatory tactic. The Judge's conclusion was based on the facts that Petitioner did not contact his lawyer until after he received his 'Bag and Baggage' letter, which was over a year past his voluntary departure deadline." Emruloski, 2002 WL 1768996 at *2. Cf. Krougliak v. INS, 289 F.3d 457, 460 (7th Cir. 2002)("In the context of deportation proceedings, a movant bears a heavy burden to reopen matters due to the discovery of previously unavailable evidence"). Judge DiBernardis' refusal to reopen was not a violation of due process; if it were, every refusal to reopen a closed case on a new theory would violate due process.

Finally, the petition summarily alleges (¶ 11) ineffective assistance of counsel. For some immigration lawyers, an allegation of ineffective assistance is an integral part of every motion to reopen or habeas petition, to be included, like an asylum/withholding/Torture claim, as a matter of form. Inundated with such assertions, some fifteen years ago the Board of Immigration Appeals devised a remedy. In Matter of Lozada, 19 I & N Dec. 637(BIA), 1988 WL 235454, aff'd 857 F.2d 10 (1st Cir. 1988), the BIA held that it would consider an ineffective assistance claim (usually

in the context of reopening) if the alien supports her claim
with: (1) an affidavit by the alien setting forth the
agreement with counsel regarding the alien's representation;
(2) evidence that counsel was informed of the allegations
and allowed to respond; and (3) an indication that a
complaint has been lodged with the state bar, or reasons
explaining why not. See Lata v. INS, 204 F. 3d 1241, 1246
(9th Cir. 1999). The purpose of these requirements is to
provide a basis for evaluating "the substantial number of
claims of ineffective assistance of counsel that come before
the Board" and providing a "mechanism ... for allowing
former counsel, whose integrity or competence is being
impugned, to present his version of events if he so chooses,
thereby discouraging baseless allegations." Lozada, 19 I & N
Dec. at 639.

        The effect of Lozada was immediate and beneficial.
Lawyers who routinely make spurious allegations of
ineffectiveness in habeas petitions nonetheless will shrink
from making a complaint to a state bar, or notifying the
other lawyer of the charge, for good reason; a baseless
accusation to a state bar may prove to be a slippery slope,

-16-

particularly when (as in Yatsenko's case) the allegation is
frivolous.[10]

Judge Nygaard, writing for the Third Circuit,
cited the <u>Lozada</u> Rule with approval in <u>Xu Yong Lu v.</u>
<u>Ashcroft</u>, *supra*. Affirming the Board's denial of a motion to
reopen, Judge Nygaard wrote "[w]e conclude that the <u>Lozada</u>
requirements are a reasonable exercise of the Board's

---

[10]    A respondent has a right to be represented by
counsel, "at no expense to the government",
<u>see</u> 8 U.S.C.A. 1229a(b)(4)(a). To establish a
Fifth Amendment due process claim of
ineffective assistance, the alien must
establish that his counsel was so ineffective
as to have created prejudice by impinging
upon the fundamental fairness of the hearing.
<u>Rodriquez-Lariz v. INS</u>, 282 F.3d 1218, 1226
(9th Cir. 2002). Ineffective assistance of
counsel may amount to a denial of due process
"if the alien was prevented from reasonably
presenting his case." <u>Xu Yong Lu</u>, 259 F.3d at
131. Yatsenko's complaint is not that he was
prevented from presenting his case in the
first place; the petition says that he told
his lawyer not to appeal after receiving
voluntary departure. The ineffective
assistance claim appears to be that
Yatsenko's former lawyer did not present an
asylum claim on his behalf; evidently he did
not ask the lawyer to do so. Immigration
lawyers are not required to advance every
theory to evade removal, particularly if the
claim has no basis in fact and/or the client
has not requested it. <u>Mejia Rodriquez v.</u>
<u>Reno</u>, 178 F.3d 1139, 1148 (11th Cir. 1999).

-17-

discretion; furthermore, the Board did not err in holding that Lu failed to satisfy these requirements. Therefore, we will affirm the denial of Lu's motion to reopen his immigration proceedings." Id., 259 F.3d at 129.

Although Yatsenko says that his case is on appeal before the BIA, he does not plead that he has complied with the Lozada rule. An alien cannot complain on habeas of an IJ's decision which is before the BIA. A court should dismiss a habeas petition if there is a failure to exhaust administrative remedies; see 8 U.S.C. § 1252(d)(1); Goonsuwan v. Ashcroft, 252 F.3d 383, 385-386 (5th Cir. 2001) (alien challenging effectiveness of counsel at his deportation hearing failed to argue ineffective assistance of counsel claim before BIA and thus deprived district court of jurisdiction to consider habeas corpus petition); Medina v. Fasanoi et al, 31 Fed.Appx. 493, 494, 2002 WL 463325, *1 (9th Cir. Mar. 6, 2002) (alien who withdrew appeal to BIA was estopped from filing habeas for failure to exhaust); Kurfees v. INS, 275 F.3d 332, 2001 WL 1382022, at *3 (4th Cir. 2001)(Under 8 U.S.C. § 1252(d), "[a] court may review a final order of removal only if ... the alien has exhausted

-18-

all administrative remedies available to the alien as of
right ...").

III. <u>CONCLUSION</u>

_____For the foregoing reasons, the petition should be
dismissed.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

_____
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division

_____
STEPHEN J. BRITT
Assistant United States Attorney

*Certificate of Service*

I certify hereby that on the 28th  Day of August,  2002, I personally

served or caused to be served a copy of the attached Government's Response To

Habeas Petition,  addressed to:

> Tatiana Aristova,  Esq.
> Law Offices of  John J. Gallagher
> 1760 Market Street, Suite 1100
> Philadelphia, PA     19103-4104
>
> *Attorney for petitioner,*

by first class mail service upon counsel.

————————————————————————————
STEPHEN J. BRITT
Assistant United States Attorney
Suite 1250, 615 Chestnut Street
Philadelphia, PA 19106-4476
(215) 861-8443
(215) 861-8642  telecopier